### A97A0267. DAVIS v. THE STATE.
(485 SE2d 508)

BLACKBURN, Judge.

Leon Davis was convicted of armed robbery, aggravated assault, possession of a firearm by a convicted felon, possession of a firearm

during the commission of a felony, and driving without a license in connection with his robbery of a convenience store. On appeal, he claims the trial court erred in granting the State's motion in limine and in denying his motion to suppress. He also argues that the trial court erroneously admitted similar transaction evidence of a prior robbery he committed. For the reasons set forth below, we affirm.

1. Pursuant to OCGA § 17-16-5, Davis served the State with written notice of his intent to present an alibi defense, including the names of six potential alibi witnesses. Although OCGA § 17-16-5 also requires disclosure of addresses and telephone numbers of alibi witnesses if known, Davis listed addresses and telephone numbers for only two of the witnesses named. After supplementing his notice with one additional address and phone number, he failed to provide any more information regarding the remaining three witnesses listed. In response, the State filed a motion in limine to prevent Davis from presenting the testimony of the alibi witnesses "not properly disclosed to the State." The court found that Davis had acted in bad faith in failing to provide the information, that the State had been prejudiced thereby, and pursuant to OCGA § 17-16-6, granted the State's motion in limine. Davis enumerates this ruling as error.

In reviewing a trial court's decision on a motion in limine, "we construe the evidence most favorably to uphold the findings and judgment, and must adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Further, since the trial court sits as the trier of facts, its findings will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *State v. Brodie*, 216 Ga. App. 198, 199 (1) (c) (453 SE2d 786) (1995). Pursuant to OCGA § 17-16-6, upon a showing of prejudice and bad faith, a trial court may prohibit a defendant from presenting witnesses not disclosed. The trial court also has discretion to enter "such other order as it deems just under the circumstances." OCGA § 17-16-6.

Arguing that he was required to disclose only those addresses and phone numbers which he knew, Davis maintains that he did not act in bad faith because he did not know the addresses and phone numbers requested.[1] See OCGA § 17-16-5 (a). In rejecting this argument, the trial court found that because the subject witnesses were actually Davis' brothers, it was highly unlikely that Davis did not know their addresses and telephone numbers, especially when he

---

[1] In the notice of intent, Davis' counsel stated that he did not have addresses and telephone numbers for four of the six alibi witnesses listed. After providing James Rodney Davis' address by supplemental response, Davis maintained to the court through counsel at the motion in limine that the addresses and telephone numbers of remaining alibi witnesses Tommy Chandler, Tim Davis, and Kevin Davis were unknown.

needed them to testify in his defense. Another brother, Wilson Davis, assisted Davis by personally serving two of the witnesses with subpoenas, yet Davis still failed to disclose to the State any information regarding how these witnesses could be contacted prior to trial. The record also reveals that the court granted Davis a continuance one month before trial in order to allow him to "get addresses and phone numbers for the witnesses that he [believed would] provide him with a defense in this matter."

In addition to its finding that Davis acted in bad faith, the court also found that the State was prejudiced by Davis' failure to supply the requested information. See OCGA § 17-16-6; *Tucker v. State*, 222 Ga. App. 517, 518 (3) (474 SE2d 696) (1996) (bad faith of one side and prejudice to the other a prerequisite for imposition of OCGA § 17-16-6 sanctions). The State argued that without these addresses and phone numbers, it was denied "a fair opportunity to investigate" Davis' alibi defense, and would be "ambushed" at trial. The trial court agreed, finding that the State would have suffered undue prejudice had the witnesses been allowed to testify at trial. Because evidence exists to support the trial court's findings regarding Davis' bad faith and the resulting prejudice to the State, the court did not err in granting the State's motion in limine, and its factual findings in this regard were not clearly erroneous.[2]

2. Davis enumerates as error the denial of his motion to suppress a custodial statement he made to the Federal Bureau of Investigation (FBI). While awaiting trial, Davis contacted the FBI from prison to see if he could supply information regarding drug trafficking in exchange for leniency in this case. Davis' statement is not contained in the record, but the transcript of the hearing on the motion to suppress indicates that he told the FBI that his four alibi witnesses and brothers, James Rodney Davis, Tommy Chandler, Tim Davis, and Kevin Davis, were his employees in the drug trafficking business.

Davis moved to suppress this statement because the FBI failed to *Mirandize* him, notify his attorney of the interview, or allow the attorney to be present at the interview.[3] The court denied Davis' motion, and ruled that the State could introduce the statement solely for impeachment of Davis' alibi witnesses should he call them. Davis then informed the court that due to this ruling, he would not call any of the four alibi witnesses. He now argues that the court's ruling was

---

[2] Although Davis' enumeration of error claims the trial court's order prevented *four* of the alibi witnesses from testifying, the motion in limine was granted as to only three witnesses: Tommy Chandler, Tim Davis, and Kevin Davis. This is so because the address and telephone number of the fourth witness, James Rodney Davis, was timely provided to the State.

[3] Davis was not represented by counsel when he initially contacted the FBI, but by the time the FBI came to the prison to interview him, counsel had been appointed.

erroneous, and that it prevented him from calling his alibi witnesses.

Because of our holding in Division 1, this enumeration of error is moot as to each alibi witness except James Rodney Davis. With respect to James Davis, the record indicates that Davis did attempt to serve this witness with a subpoena, but was unable to do so. Davis' inability to get James Davis subpoenaed prevented him from calling this witness at trial, not the trial court's ruling on the motion to suppress. Had James Davis been subpoenaed, the trial court would have permitted him to testify, but like any other witness, he would have been subject to impeachment.

Even assuming arguendo that the ruling prevented Davis from calling James Davis, Davis presented testimony at trial from two other alibi witnesses. "Appellant's alibi defense was fully and fairly presented to the jury, which rejected it. Any testimony by [another] alibi [witness] would have been cumulative of other testimony in the case." *Ealy v. State*, 251 Ga. 426, 428 (2) (306 SE2d 275) (1983). This enumeration is therefore without merit.

3. The trial court admitted prior similar transaction evidence of an armed robbery Davis committed in 1984. Claiming that the transactions were not sufficiently similar and that the prior transaction was too remote in time to be admissible, Davis enumerates the admission of this evidence as error.

"There are two conditions for admissibility of similar transaction evidence: (1) there must be some evidence establishing that the independent crime was committed by the defendant, and (2) there must be sufficient similarity or connection between the independent crime and the offense charged so that proof of the former tends to prove the latter. . . . The ultimate issue for admissibility is whether the evidence of other crimes has relevance to the issues in the trial of the case at bar." *Harris v. State*, 222 Ga. App. 52, 54 (473 SE2d 232) (1996).

The armed robbery involved in this case occurred in 1994 when Davis pulled a gun on the owner of Carter's One-Stop, a combination service station and salvage yard. The victim, who was over age 60, was alone in the store minding the register when Davis approached the counter with a purchase. Once the victim rang up the sale, Davis threatened him with a gun. Davis stole only bills, no coins, and robbed the store during daylight hours. He then fled in a vehicle parked nearby.

With respect to the prior similar transaction, the State introduced evidence that Davis had been convicted for the 1984 armed robbery of Casper's Produce, a small, family-owned store. The victim in that case, who was also over age 60, was approached by Davis while she was alone in the store minding the register. After asking her the price of french fries, Davis pulled a knife on the victim and

robbed the store. The robbery occurred during the daytime, and Davis stole only bills, no coins. Davis left the produce stand in a vehicle which was parked nearby.

The trial court found that these transactions were similar because in both cases, a small, family-owned business was robbed, the victims were both elderly and in their stores alone when the incidents occurred, both robberies took place during daylight hours, in neighboring counties, by use of an offensive weapon, and in each case, Davis passed up checks and change, stealing only bills. Because these two transactions are similar enough that commission of the earlier armed robbery tends to prove the latter, the trial court did not err in admitting this evidence. See *Harris*, supra. The fact that a gun was used in one robbery and a knife in the other is not dispositive. Both are offensive weapons which were used to threaten the victims, and "[w]hile some differences between the two armed robberies exist, there is no requirement that the transactions be identical in every aspect." *Murphy v. State*, 212 Ga. App. 153, 154 (1) (442 SE2d 2) (1994). Additionally, as the State introduced Davis' conviction for the earlier crime into evidence, there is no question that Davis committed the earlier armed robbery. See *Harris*, supra at 54.

The fact that the prior similar transaction occurred ten years before the offense charged does not change this result. "Although lapse of time is one of the more important factors to weigh in considering the admissibility of the evidence in question it is not wholly determinative." (Citations and punctuation omitted.) *Wilson v. State*, 220 Ga. App. 487, 490 (2) (a) (469 SE2d 516) (1996) (12-year lapse between rape offenses not too remote); see also *Anderson v. State*, 183 Ga. App. 669, 670 (359 SE2d 688) (1987) (12-year lapse between armed robberies not too remote). Additionally, Davis was incarcerated for some period during the ten years separating the two offenses, "thus circumscribing his ability to commit similar offenses" during part of the intervening ten-year period. (Citations and punctuation omitted.) *Wilson*, supra at 490 (2) (a). Under these circumstances, the prior similar transaction was not too remote to be admissible, and this enumeration is therefore without merit.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED MARCH 6, 1997 —
RECONSIDERATION DISMISSED APRIL 4, 1997 — 

 Before Judge Sorrells.

*Dickinson, Noel & Mixson, Scott P. Willis*, for appellant.

Leon Davis, *pro se.*

*Alan A. Cook, District Attorney, Anne M. Templeton, Assistant District Attorney*, for appellee.