## S08A0494. CLARK v. THE STATE.
(657 SE2d 872)

THOMPSON, Justice.

Appellant Stanley Ryan Clark was convicted of malice murder, false imprisonment, and various other offenses in connection with the fatal shooting of James Randall Roe.[1] Clark appeals from the denial of his motion for new trial, challenging the jury instructions on aggravated assault and venue, and asserting that the evidence was constitutionally insufficient to support the verdicts. Finding no error, we affirm.

Just after midnight on the day of the shooting, Clark and Roe left Clark's home in a vehicle belonging to Clark's mother, in search of illegal drugs. At about 1:00 a.m., Clark drove to a friend's apartment; Clark was holding a sawed-off shotgun directed at Roe, and Clark informed his friend, "that they finally caught this guy that snitched out Melanie." For the next hour, they remained at the friend's apartment while Clark continued to hold Roe at gunpoint. When his friend could not convince Clark to release Roe, they were asked to leave and Clark drove away with Roe in the front passenger seat.

Roe's body was discovered in the early morning hours in the front passenger seat of the same car. He had sustained a large gunshot wound at contact range across the front of the neck, which extended from left to right, and which resulted in death due to blood loss. A sawed-off shotgun belonging to Clark was retrieved from the back floorboard, along with numerous shotgun pellets.

Clark testified in his own defense that he shot Roe accidentally after the two had spent the early morning hours together driving around in search of drugs, and consuming large quantities of methamphetamine and alprazolam tablets (Xanax). He further acknowledged that he routinely kept his loaded sawed-off shotgun under his bed or in his car; that at the time of the shooting, he had the loaded weapon in his left hand in a cocked position with his finger on the trigger while he drove the car between 60 and 80 miles per hour to elude a vehicle that was pursuing them; that he turned around with

---

[1] The crimes occurred on December 6, 2003. A true bill of indictment was returned charging Clark with malice murder, felony murder (two counts), false imprisonment, simple battery (two counts), possession of a firearm during commission of a crime, possession of a sawed-off shotgun, possession by ingestion of methamphetamine, and criminal trespass. Trial commenced on August 22, 2006, and on August 25, 2006, a jury acquitted Clark of two counts of simple battery and found him guilty of the remaining offenses. The felony murder counts were merged for purposes of sentencing, and on September 20, 2005, Clark was sentenced to life imprisonment for malice murder, plus consecutive terms of 35 years for the remaining crimes. A timely motion for new trial was denied on August 1, 2007. A notice of appeal was filed on August 23, 2007. The case was docketed in this Court on November 27, 2007, and was submitted for a decision on briefs on January 21, 2008.

the shotgun in hand to shoot at the car behind them, but accidentally shot Roe; and that after the shooting he abandoned Roe and ran to his former girlfriend's residence where he kicked in the front door and demanded to see his children "because it would probably be the last time" he would ever have the opportunity. Although Clark knew that his girlfriend had summoned the police, he ran from the residence and went to the home of another friend where he changed his bloody clothing, and telephoned his father and asked him to report the vehicle as stolen. After learning that he was wanted in connection with Roe's murder, Clark continued to elude the authorities for the remainder of the day. Later that evening, he agreed to turn himself in to a law enforcement family friend.

1. Clark submits that the evidence was insufficient to support his convictions for false imprisonment and malice murder.

(a) "A person commits the crime of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). The undisputed evidence from two eyewitnesses established that Clark detained Roe at gunpoint despite Roe's entreaties to be released. The elements of OCGA § 16-5-41 (a) were established under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Alexander v. State*, 279 Ga. 683 (1) (620 SE2d 792) (2005).

(b) The crime of malice murder is "committed when the evidence shows either an express or, in the alternative, an implied intent to commit an unlawful homicide." *Parker v. State*, 270 Ga. 256, 259 (4) (507 SE2d 744) (1998). Evidence that one "acted in reckless disregard for human life is, for purposes of demonstrating his guilt of the crime of malice murder, as equally probative as evidence that he acted with a specific intent to kill." (Punctuation omitted.) *Jackson v. State*, 272 Ga. 554, 555 (1) (532 SE2d 674) (2000). See also *Cook v. State*, 273 Ga. 828, 829 (1) (546 SE2d 487) (2001). At the very least, Clark's admitted conduct in having been intoxicated on illegal drugs, driving at a high rate of speed, and keeping his finger on the trigger of a loaded, cocked weapon while turning around in the driver's seat so that the barrel of the weapon made contact with Roe's neck, demonstrates a reckless disregard for human life. We hold that a rational trier of fact could have found Clark guilty beyond a reasonable doubt of malice murder, as well as the other crimes for which he was convicted.[2] *Jackson v. Virginia*, supra.

---

[2] As noted previously, Clark admitted at trial that he possessed the sawed-off shotgun, that he had ingested methamphetamine on the day of the shooting, and that he had committed criminal trespass by kicking in the door and breaking into his girlfriend's home.

2. Clark also enumerates as error two aspects of the jury instruction.

(a) First, he submits that the trial court erred by placing undue emphasis on the definition of aggravated assault.

Jury instructions are viewed as a whole to determine whether a charge contains error. *Whitaker v. State*, 275 Ga. 521 (570 SE2d 317) (2002). "Mere repetition of a correct and applicable principle of law is not such error as requires reversal unless it takes color of an argumentative or opinionative utterance so as to tend to prejudice the minds of the jury." (Punctuation omitted.) *Grier v. State*, 273 Ga. 363, 366 (4) (541 SE2d 369) (2001). A reversal is not required in this case because the charge on aggravated assault was a correct principle of law and was not so unduly emphasized as to unfairly prejudice the minds of the jury. Id.

(b) Relying on *Napier v. State*, 276 Ga. 769 (583 SE2d 825) (2003), Clark asserts that the trial court gave an improper burden-shifting charge on venue. In *Napier*, unlike the present case, there was conflicting evidence as to where a murder occurred, and the court charged the language of OCGA § 17-2-2 (c) and (h), which apply if it cannot be determined in which county the cause of death was inflicted or the crime was committed. The Court in *Napier* suggested an instruction that modified the statutory language in order to avoid any improper burden-shifting presumptions. In the present case, the court properly charged that venue was a jurisdictional fact that must be proved by the State beyond a reasonable doubt as to each crime charged in the indictment. Because venue was not in dispute, a charge on OCGA § 17-2-2 (c) or (h) was neither required nor given. Thus, this enumeration of error is without merit.

3. Our review of the record confirms that the State proved beyond a reasonable doubt that venue as to each of the charged offenses was properly laid in Bartow County. See *Jones v. State*, 272 Ga. 900 (2) (537 SE2d 80) (2000). Clark's assertions to the contrary are wholly without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 25, 2008.

*Mary Erickson*, for appellant.

*T. Joseph Campbell, District Attorney, Thurbert E. Baker, Attorney General, Reggie A. Lampkin, Assistant Attorney General*, for appellee.